UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02099-MSK-MEH

STRIKE 3 HOLDINGS, LLC,

    Plaintiff,

v.

JOHN DOE subscriber assigned IP address 76.120.69.219,

    Defendant.

## MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA BEFORE A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Strike 3 Holdings, LLC ("Plaintiff") respectfully moves for entry of an order granting it leave to serve a third-party subpoena on Comcast Cable, prior to a Rule 26(f) conference (the "Motion"). Filed contemporaneously with this Motion are the following: (1) Memorandum of Law in support of this Motion; (2) Declaration of Greg Lansky in support of this Motion; (3) Declaration of Tobias Fieser in support of this Motion; and, (4) Declaration of Susan B. Stalzer in support of this Motion.

//

//

//

//

//

1

A proposed order is attached for the Court's convenience.

Dated: 08/05/2019                    Respectfully submitted,


                                     By: */s/ Lincoln Bandlow*
                                     Lincoln Bandlow, Esq.
                                     **Law Offices of Lincoln Bandlow, P.C.**
                                     1801 Century Park East, Suite 2400
                                     Los Angeles, CA  90067
                                     Phone: (310) 556-9680
                                     Fax: (310) 861-5550
                                     Email: lincoln@bandlowlaw.com

                                     *Attorney for Plaintiff*
                                     Strike 3 Holdings, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA
BEFORE A RULE 26(f) CONFERENCE**

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff Strike 3 Holdings, LLC ("Strike 3") hereby respectfully submits this Memorandum of Points and Authorities in support of its Motion for Leave to Serve a Third-Party Subpoena Before a Rule 26(f) Conference.

**I.     INTRODUCTION**

Strike 3 is the owner of original, award-winning adult motion pictures featured on its subscription-based websites.[1] Unfortunately, like many other producers of motion pictures, Strike 3's success is substantially harmed and threatened by Internet users illegally infringing its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Lansky Decl. ¶ 25.[2]

To address this problem, Strike 3 hired an investigator, IPP International U.G. ("IPP"), to monitor and detect the infringement of Strike 3's content. IPP discovered that Defendant's IP address was illegally distributing numerous motion pictures owned and copyrighted by Strike 3. Strike 3 knows Defendant only by his or her IP address. This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party that has the information necessary to identify Defendant by correlating the IP address with John Doe's identity.

---

[1] *See generally* concurrently-filed Declaration of Greg Lansky ("Lansky Decl.").
[2] *See also* Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, INVERSE (May 24, 2017), https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview.

1

As a result, Strike 3 now seeks leave to serve limited, immediate discovery on Defendant's ISP, Comcast Cable Communications, LLC (Comcast Cable) so that Strike 3 may learn Defendant's identity, investigate Defendant's role in the infringement, and, if warranted by the investigation, effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time. *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("[E]xpedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.").

Accordingly, Strike 3 hereby seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Strike 3 will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

**II.    FACTS**

    **A.    <u>BitTorrent Infringement has a Serious and Damaging Impact on Strike 3</u>**

Greg Lansky ("Mr. Lansky") is a member of General Media Systems, LLC, ("GMS"), the parent company that owns Strike 3. *See* Lansky Decl. at ¶ 1. Strike 3 is the holding company established by GMS to hold title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. *Id.* at ¶ 3. Strike 3 is owned entirely by Mr. Lansky's company, GMS, and has existed since 2015. *Id.*

Mr. Lansky is the creator of the Brands. *Id.* at ¶ 1. Mr. Lansky moved to the United States from Paris to pursue his dream of creating art in an adult context. *Id.* at ¶ 4. He has always been passionate about photography and cinematography. *Id.* It was a difficult start. Mr. Lansky, who barely spoke English, had trouble making connections and finding employment. *Id.* at ¶ 5. Eventually, after tremendous hard work, Mr. Lansky was fortunate to be hired by some of the most successful adult brands in the world. *Id.* at ¶ 6. Through these experiences, Mr. Lansky was able to establish himself and become an expert in the field. *Id.*

In 2013, Mr. Lansky decided to risk everything to create his own company and studio. *Id.* at ¶ 7. After a few years, his brands turned into a multi-million dollar a year business. *Id.* at ¶ 11. His philosophy is to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 12–13. Moreover, Strike 3's motion pictures are known for having the highest production budget of any in the adult industry. *Id.* at ¶ 15.

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world, with 20 million visitors to its websites per month, and have a loyal following. *Id.* at ¶ 11. Strike 3 is also currently the number one seller of adult DVDs in the United States. *Id.* at ¶ 17. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 18. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 19. Mr. Lansky himself has also won "director of the year" several times. *Id.*

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3. As Mr. Lansky succinctly puts it, Strike 3 "can compete in the industry, but we cannot compete when our content is stolen." *Id.* at ¶ 22. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 29.

### B. Strike 3 Brings its Litigation in Good Faith

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices that people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 28. Therefore, Strike 3 only files strong cases against extreme infringers. *Id.* at ¶ 29. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id.* Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 30. Moreover, Strike 3 does not send demand letters nor make any attempt to contact a defendant prior to service of the Complaint. *Id.* Finally, although certainly Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding the content they choose to enjoy. Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of a case; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity. Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis

for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests. *Id.* at ¶ 31.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs and licenses. *Id.* at ¶ 32. Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and direct those who infringe content to the avenue of legitimately acquiring access to Strike 3's works. *Id.*

### III.  ARGUMENT

#### A.  <u>Legal Standard Governing Expedited Discovery Requests to Identify an Anonymous Defendant</u>

"The court may, in the exercise of its broad discretion, alter the timing, sequence and volume of discovery." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Under Rule 26(d) of the Federal Rules of Civil Procedure, "discovery may be conducted prior to a Rule 26(f) conference 'when authorized by . . . court order.'" *Malibu Media, LLC v. John Does 1-27*, No. CV 12-00406-REB-KMT, 2012 WL 629111, at *1 (D. Colo. Feb. 27, 2012). In this district, "courts have permitted such expedited discovery upon a showing of good cause." *Id.* (collecting cases). While the Tenth Circuit has not prescribed a precise analysis for what constitutes good cause for early discovery, this Court has previously examined several factors and circumstances in the past, including the risk of relevant information despoiling, the necessity of the information and the lack of alternative means of obtaining that information. *See e.g.*, *Malibu Media*, No. CV 12-00406-REB-KMT, 2012 WL 629111 at *2. For the following reasons, Plaintiff has such good cause to proceed with early discovery.

## B.     Good Cause Exists for Early Discovery to Subpoena Information that Is Ephemeral and Necessary

The unique nature of the online landscape these infringements take place over necessitates early discovery.[3]  "Primary among these [circumstances] is the indication that an ISP typically retains user activity logs for only a limited time, and then the logs are erased. Without these logs, the true identities of the Defendants may never be known." *Arista Records LLC v. Does 1-9*, No. CV 07-00628-EWN-MEH, 2007 WL 1059049, at *1 (D. Colo. Apr. 4, 2007); *Qwest*, 213 F.R.D. at 419 ("Expedited discovery may also be appropriate in cases where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation.") (citation omitted); *accord Interscope Records v. Does*, No. CV 06-00352-WDM-PAC, 2006 WL 1351876, at *1 (D. Colo. Mar. 13, 2006).  These records are indispensable: "Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation . . . ." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 556 (S.D.N.Y. 2004).

This Court has long held that good cause exists in cases such as this "because the '[d]efendants must be identified before this suit can progress further.'" *Malibu Media,* No. CV 12-00406-REB-KMT, 2012 WL 629111 at *1 (quoting *Arista Records*, No. CV 07-00628-EWN-MEH, 2007 WL 1059049 at *6).  "Defendants here have engaged in anonymous online

---

[3] The technical operations and jargon pertaining to the BitTorrent network have been thoroughly defined and outlined by this Court.  *See e.g*., *Dallas Buyers Club, LLC v. Hudson*, No. CV 15--00598-WYD-MEH, 2016 WL 320918, at *1–2 (D. Colo. Jan. 5, 2016), *report and recommendation adopted*, No. CV 15-00598-WYD-MEH, 2016 WL 309075 (D. Colo. Jan. 26, 2016).

6

behavior,[4] which will likely remain anonymous unless Plaintiff is able to ascertain their identities. Thus, Plaintiff reasonably believes that there are no practical methods to discover Defendants' identities without court-ordered discovery." *Malibu Media,* No. CV 12-00406-REB-KMT, 2012 WL 629111 at *1.  "Accordingly, *because it appears likely that Plaintiff will be thwarted in its attempts to identify Defendants without the benefit of formal discovery mechanisms*, the court finds that Plaintiff should be permitted to conduct expedited discovery, pursuant to Fed.R.Civ.P. 45, for the limited purpose of discovery the identities of Defendants.". *Id.*

The necessity of the information is reinforced by the limited request in Strike 3's subpoena.  *See e.g.*, *Arista Records*, No. CV 07-00628-EWN-MEH, 2007 WL 1059049 at *1 ("Plaintiffs have proposed narrowly tailored discovery which will ultimately permit them to serve process if possible and move forward with this lawsuit, by use of a Rule 45 subpoena served upon the Defendants' ISP.").  Strike 3 requests leave to discover only that which is absolutely necessary. *Strike 3 Holdings, LLC v. Doe*, No. CV 3:17-1680 CSH, 2017 WL 5001474, at *4 (D. Conn. Nov. 1, 2017) (citation omitted) ("Defendant's ISP . . . is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address . . . during the time of the alleged infringement."). This narrow request,

---

[4] "This Court agrees with those courts finding that internet subscribers do not have an expectation of privacy in the identifying information they conveyed to their ISPs." *Malibu Media, LLC v. Doe*, No. CV 13-01523-WYD-MEH, 2013 WL 4510363, at *2 (D. Colo. Aug. 26, 2013) (citing *AF Holdings, LLC v. Does 1–162,* No. CV 11–23036, 2012 WL 488217, at *4 (S.D. Fla. Feb. 14, 2012); *First Time Videos, LLC v. Does 1–18,* No. CV 4:11–69–SEB–WGH, 2011 WL 4079177, at *1 (S.D. Ind. Sept. 13, 2011)).

7

sought for a narrow yet essential purpose – to serve and litigate claims for anonymous copyright infringement – produces the requisite good cause for leave to take early discovery.

### C. A Protective Order Can Balance Both Parties' Interests

In BitTorrent cases involving adult content, Courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously.  *See e.g.*, *Malibu Media, LLC v. John Does 5-8*, No. CV 12-03170-PAB-MEH, 2013 WL 1164867, at *4 (D. Colo. Mar. 20, 2013).  Such an order comports with Strike 3's policy of respecting privacy regarding a person's content choices.  Thus, should the Court find such procedures to be appropriate, Strike 3 would not oppose them being established in this action.

## IV.     CONCLUSION

For those reasons discussed above, Strike 3 has established that good causes exists here, and Strike 3 respectfully asks this court to grant Plaintiff leave to serve a third-party subpoena prior to a Rule 26(f) conference.

Dated: 08/05/2019                                       LAW OFFICES OF LINCOLN BANDLOW, PC

                                                        Respectfully submitted,

                                                        By: _____
                                                        Lincoln Bandlow, Esq.
                                                        LAW OFFICES OF LINCOLN BANDLOW, PC

                                                        *Attorney for Plaintiff*
                                                        Strike 3 Holdings, LLC

8